IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRI LINN HUGHES, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-23-256-GLJ |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant Terri Linn Hughes requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the

---

[2] Step one requires Claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If Claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, Claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If Claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that Claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that Claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was fifty-six years old at the time of the most recent administrative hearing (Tr. 723). She completed high school, as well as cosmetology training and certification as a CNA, and previously worked as a security guard, roller operator, and lumber grader (Tr. 234, 743-744). Claimant alleges inability to work since an amended alleged onset date of July 1, 2017, due to anti-nuclear auto immune disorder, Sjogren's syndrome, lupus, depression, hypothyroidism, asthma and bad lungs, and stomach problems (Tr. 233).

## Procedural History

Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 14, 2018. Her applications were denied. ALJ Susanne M. Cichanowicz conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated August 31, 2020 (Tr. 10-19). The Appeals Council denied review, but this Court reversed the decision in Case No. CIV-21-80-RAW-SPS and remanded the case with instructions to properly consider all of Plaintiff's impairments, including her asthma. (Tr. 754-764). On remand, ALJ Marjorie Panter held a second administrative hearing and again determined Claimant was not disabled in a written decision dated April 25, 2023. (Tr. 696-709). The

Appeals Council again denied review, so the ALJ's April 2023 opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. At step two, she found Claimant had the severe impairments of systemic lupus erythematosus, asthma, anxiety, depression, and posttraumatic stress disorder, as well as the nonsevere impairments of hypertension, hepatitis C, Sjogren's syndrome, lymphedema, hypothyroidism, fibromyalgia, and obesity. (Tr. 699). At step three, she determined Claimant did not meet a listing. (Tr. 699-702). She found at step four that Claimant could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry up to twenty pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. However, the ALJ additionally found Claimant could never climb ladders/ropes/scaffolds; only occasionally have concentrated exposure to environmental irritants such as dusts, odors, gases, and fumes; and she could frequently climb ramps/stairs, balance, stoop, kneel, crouch, crawl, and handle and finger bilaterally. Finally, she found Claimant could understand, remember, and carry out detailed but not complex instructions; concentrate for two-hour periods with routine breaks, respond appropriately to frequent changes in the workplace, and have frequent contact and interaction with supervisors, coworkers, and the public. (Tr. 702). The ALJ thus concluded at step four that Claimant could return to her past relevant work as a security guard, and she was therefore not disabled. (Tr. 708).

## Review

Claimant contends that the ALJ erred by failing to discuss the evidence as to her impairments. Specifically, she alleges the ALJ's discussion of three types of evidence was insufficient: (i) regarding February 2019 pulmonary function test results, (ii) the extent of her symptoms and radiological findings as to her respiratory impairments throughout the relevant period, and (iii) various abnormal physical findings she contends support greater limitations than the assigned RFC. The Court finds these arguments unpersuasive, and the ALJ's opinion is therefore affirmed.

The medical evidence related to Claimant's physical impairments at issue on appeal reveals that, prior to her amended alleged onset date, a bout of pneumonia in January 2016 landed Claimant in the hospital. (Tr. 476). After the July 1, 2017 alleged onset date, Claimant often, though not always (Tr. 384, 616), complained of shortness of breath with exertion. (Tr. 320, 345, 457, 685). A March 21, 2018 chest x-ray was unremarkable, but a May 12, 2018 x-ray of the chest revealed bibasilar atelectatsis versus infiltrates, right worse than left. (Tr. 330, 493). A September 18, 2018 chest x-ray revealed right basilar infiltrate and small pleural effusion. (Tr. 563).

Claimant received treatment for her autoimmune disorder in the fall of 2018 and thereafter. Treatment notes indicate she regularly reported shortness of breath, as well as musculoskeletal joint pain, with improvement. (Tr. 504-530, 552, 556). Following a pulmonary function test, the percent of predicted PEF was less than 60%, classifying her asthma as severe and persistent. (Tr. 520). A pulmonary function test done on February

26, 2019, likewise showed a moderately severe restriction with no significant improvement in FVC FEV1 after medication. (Tr. 601-613).

As to her physical impairments, state agency physicians determined initially and upon review that Claimant could perform the full range of light work, with no additional limitations (Tr. 66-67, 107-109).

In her written opinion at step two, the ALJ discusses Claimant's assessed severe and nonsevere impairments. (Tr. 699). After finding Claimant does not meet a Listing at step three, at step four the ALJ summarizes Claimant's hearing testimony as well as the evidence in the record. (Tr. 702-708). As relevant to the physical impairments at issue here, the ALJ notes the course of Claimant's lupus diagnosis and treatment, beginning in the latter part of 2018 through 2022, pointing out treatment had been helpful but had not totally resolved Claimant's pain, including at least four tender points that appear to be an element of fibromyalgia. (Tr. 704-705). Additionally, she discusses Claimant's reports of shortness of breath, as well as diagnostic testing and the related pulmonary function tests, finding Claimant does not have hospitalization records to meet a listing, but that her asthma was severe and accounted for in the RFC. (Tr. 705). The ALJ discusses Claimant's numerous complaints of shortness of breath found in the record, but notes these are not generally accompanied by respiratory issues or positive physical examinations such as rhonchi, wheezing, or rales. (Tr. 705-706). The ALJ thus relies on the pulmonary function test and imaging studies to support a finding that Claimant's severe asthma impairment is not as limiting as she alleges. (Tr. 706). The ALJ also notes that records as to Claimant's physical limitations varied from findings of tenderness to no severe pain. As part of this

discussion, she notes Claimant's testimony regarding pain in her hands, although treatment records generally showed normal range of motion, grip, and strength, but found the lupus could account for pain and stiffness in the hands and thus included only frequent handling and fingering as part of her RFC. (Tr. 705). She then states that she finds the state reviewing physician opinions partially persuasive, but that she imposed additional environmental and postural limitations due to Claimant's reports of pain, stiffness, and shortness of breath, as well as any "subtle affects her non-severe impairments may be causing her." (Tr. 706). The ALJ ultimately concludes that Claimant is not disabled because she could return to past relevant work as a security guard. (Tr. 708).

An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case

record." Soc. Sec. R. 96-8p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty.

Claimant contends that the ALJ failed in properly assessing her RFC to account for all of her impairments. She contends the ALJ failed to note that her range of post-bronchodilator FVC and FEV1 values showed no significant improvement from pre-bronchodilator values, and further failed to state that her best FEV1 value was .14 from satisfying a Listing. She thus contends the ALJ relied on Claimant's pulmonary function tests to discount the respiratory difficulties. Additionally, she contends the ALJ failed to cite to every instance in the record where Claimant reported shortness of breath, and that she further discounted the significance of these reports while also ignoring a 2018 chest x-ray indicating Claimant had the acute illness of pneumonia, as well as a 2021 record that falls outside the relevant time period. Finally, she contends the ALJ ignored findings that Claimant was in pain or ill, had tenderness and trigger points, and other various findings, as well as a 2022 scan of the left hip indicating further impairment.

Contrary to Claimant's arguments, the ALJ discussed all the evidence in the record and her reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect that Claimant had further limitations than those posed in the RFC. The ALJ clearly considered Claimant's tenderness

(*including her trigger points*), stiffness, and pain, discussing them at several points at step four and noting how the entirety of the record informed her decision. The longitudinal evidence in the record (both prior to and after the alleged onset date) does not reflect further limitations, and the ALJ clearly considered *all* the evidence in the record because she noted Claimant's testimony, treatment notes, and diagnostic testing results, discussing what support Claimant's complaints and what did not. Claimant erroneously contends the ALJ did not acknowledge her trigger points and that the ALJ relied on her pulmonary function tests to discount her respiratory impairment. However, the ALJ clearly noted Claimant's nonsevere impairment of fibromyalgia at step two and at step four specifically recognized that Claimant was positive for four tender points in November 2019, almost a full year after the end of her insured status. (Tr. 699, 704). Moreover, the ALJ used Claimant's pulmonary function tests to support further environmental limitations in the RFC because it was a severe impairment and despite the fact she did not meet a listing. Failing to find Claimant disabled because she has a respiratory impairment does not mean the ALJ "discounted" the impairment. While Claimant's pulmonary function tests may have been close to a Listing, they did not actually meet a Listing. The ALJ's analysis additionally acknowledged the repeated complaints of shortness of breath but found that these reports were not fully supported by examination of Claimant. Furthermore, Claimant points to no medical documentation, within the relevant time period or outside it, providing further *functional* limitations. Because she points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely

affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

There is no indication here that the ALJ misread Claimant's medical evidence taken as a whole, and her evaluation is entitled to deference. *See Casias*, 933 F.2d at 801. Because the ALJ's decision is "reasonably discerned," the Court declines to remand. *Garland v. Ming Dai*, _ U.S. _, 141 S. Ct. 1669, 1679 (2021) (An agency is not required to "follow a particular formula or incant 'magic words' like 'incredible' or 'rebutted' to overcome [a] presumption of credibility on appeal. To the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.' So long as the [Agency's] reasons for rejecting [a person's] credibility are reasonably discernible, the agency must be understood as having rebutted the presumption of credibility. It need not use any particular words to do so. And, once more, a reviewing court must uphold that decision unless a reasonable adjudicator would have been compelled to reach a different conclusion.") (quoting, *inter alia*, *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).

The ALJ noted the medical record available in this case, gave reasons for her RFC determination, and ultimately found that Claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293. This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the

ALJ.") (citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the Commissioner's decision should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 29th day of July, 2024.

_____
**GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE**